**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Richard O'Hara,                                     Civ. No. 08-5160 (JRT/JJK)

        Petitioner,
v.                                                  **REPORT AND**
                                                    **RECOMMENDATION**
Ricardo Rios, Local Director/Warden;
Michael Nalley, Reginal Director; and
Harley Lappin, National Director;

        Respondents.

---

Richard O'Hara, 05981-089, Federal Medical Center, FMB 4000, Rochester, MN 55903, *pro se*.

Ana H. Voss and Gregory G. Brooker, Assistant United States Attorneys, counsel for Respondents.

---

JEFFREY J. KEYES, United States Magistrate Judge

    This matter is before the undersigned United States Magistrate Judge on the Petition of Richard O'Hara for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, this Court recommends that the Petition be denied.

## I.  INTRODUCTION

    Petitioner is currently designated to the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"). He is serving a 120-month sentence, followed by three years of supervised release, imposed by the United States

District Court for the Eastern District of Wisconsin.  He was sentenced pursuant to his conviction for "Conspiracy to Possess Stolen Property with a Value in Excess of $5,000 Which Traveled Across a State or U.S. Border After Having Been Stolen and Travel from Illinois to Wisconsin to Commit Extortion, in violation of 18 U.S.C. §§ 371, 1952, and 2."  (Doc. No. 6, Decl. of Angela Buege ("Buege Decl.") ¶ 3.)  Petitioner has a projected release date of December 1, 2009, via Good Conduct Time ("GCT") release.

In this action, Petitioner alleges that the staff of the Bureau of Prisons ("BOP") violated a federal statute, the Second Chance Act of 2007, Pub. L. 110-199, 122 Stat. 657 (2008) ("SCA"), which became effective on April 9, 2008, because the BOP did not grant him a full 12-month placement at a Residential Reentry Center ("RRC") before the end of his sentence.  Petitioner seeks a ruling from this Court that the mandatory language, plain meaning, and Congressional intent of the SCA give him the right to a full 12-month placement at a RRC, which would be commonly referred to as a "halfway house."  Petitioner was, in fact, reviewed for RRC placement under the SCA by the staff at FCI Waseca on July 15, 2008, but his "unit team" recommended that he receive a 180-day RRC placement, not the 365-day placement to which he contends that he is entitled.

Petitioner also alleges that the SCA violates the "prohibited Bill of Attainder, 5th and 14th Amendments, 42 U.S.C. §§ 1983 & 1985 . . ." because it allows the Director of the BOP, at his discretion, to arbitrarily reduce the sentences of some prisoners, depending on where they are incarcerated.  (Doc.

No. 1 at 3.) He asserts that all 65-year-old prisoners who were "not given a 25% reduction in their sentence[s] because of where they are imprisoned by the Respondents" have been denied "equal protection under the law." (*Id.* at 5.)

Finally, Petitioner alleges that the Director of the BOP has violated the SCA by failing to issue required regulations within 90 days after the date of the enactment of the SCA while "clandestinely issuing an inner-department memo" directing the staff to provide no more than 180 days of RRC placement.

Petitioner seeks the following relief:

> 1.   I request that the Respondents follow the intent of Congress in passing the SCA and the President in signing the Act to release the Petitioner to the mandatory requirement of 365 days in the community custody.
>
> 2.   I request that the Respondents not violate the prohibited Bill of Attainder by discriminating against prisoners who are 65 years old, but are not given a 25% reduction in their sentence because of where they are imprisoned by the Respondents.

(*Id.*)

## II.   JURISDICTION AND PROPER PARTY

Petitioner asserts that this Court has jurisdiction over his Petition pursuant to 28 U.S.C. § 2241. Where an inmate challenges the fact or duration of his confinement, a writ of habeas corpus is the appropriate remedy. *Preiser v. Rodriquez,* 411 U.S. 475, 490 (1973); *Archuleta v. Hedrick*, 365 F.3d 644, 647 (8th Cir. 2004). Petitioner seeks earlier placement in an RRC, which does relate to the fact or duration of his confinement. Thus, 28 U.S.C. § 2241 is the proper jurisdictional basis to pursue this ground of his habeas petition.

3

As of October 2008, Petitioner had not finished the final step of administrative review of his appeal of the Regional Director's decision to grant him only 180-days of pre-release confinement in an RRC.  At that time, the Central Office of the BOP had not issued its final response.  However, our jurisdiction to decide this case is not affected by Petitioner's failure to exhaust his administrative remedies because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional.  *Leuth v. Beach*, 498 F.3d 795, 797 (8th Cir. 2007).  Thus, the court may, in its sound discretion, waive the exhaustion requirement where its imposition would prejudice the prisoner's subsequent court action because of the unreasonable timeframe involved in the administrative remedy.  *Jones v. Zenk*, 495 F.Supp. 2d 1289, 1297 (N.D. Ga. 2007).  The Petitioner's claim is that he is entitled by federal law to a 365-day period of pre-release confinement in an RRC before the expiration of his sentence, which is due to occur on December 1, 2009.  Given the fact that there are now less than 365 days to the end of the sentence, awaiting the final response of the Central Office would potentially prejudice—indeed would likely make moot—any court action brought at a later time.  Thus, the exhaustion requirement should be waived and the merits of the Petition should be reviewed.

The only proper respondent in a habeas corpus petition under 28 U.S.C. § 2241 is the custodian of the inmate.  18 U.S.C. §§ 2242, 2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 495-96 (1973); *United States v. Chappel*, 208 F.3d 1069, 1070 (8th Cir.

4

2000).  For purposes of habeas petitions, the custodian of an inmate is the Warden of the facility in which the inmate is confined.  *Rumsfeld*, 542 U.S. at 435; *Green v. Fed. Bureau of Prisons*, No. 00-819 (JRT/JMM), 2002 WL 32619483, at *2 (D. Minn. Jan. 29, 2002).  Ricardo Rios, Warden at FCI Waseca, is the proper respondent.  Thus Michael Nalley and Harley Lappin should be removed as Respondents from this action if this Petition is not dismissed as recommended below.

### III.   SCA REVIEW

Petitioner's primary argument is that the SCA requires the BOP to place Petitioner in a halfway house for the last 12 months of his sentence.  He bases this argument on the statutory language of 18 U.S.C. § 3624(c)(1), which provides that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (*not to exceed 12 months*), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

(Emphasis added).  The plain meaning of this statute is that the period of confinement in a community correctional facility must not exceed 12 months, not that it must be 12 months.  The BOP clearly has discretion, within the statutory guidelines, to choose a period of time of less than 12 months, or indeed no period of time at all, for the reentry adjustment phase.  And the BOP also has discretion to choose the appropriate "conditions" that will afford a reasonable

5

opportunity for the adjustment and reentry of the prisoner into the community; this "may" include a community correctional facility (i.e., halfway house) but release to the custody of such a facility is not mandated.

This conclusion is buttressed by the provision in the SCA related to home confinement. The SCA gives the BOP the discretion to place a prisoner in home confinement during the reentry adjustment phase. The SCA restricts this period even further:

> The [home confinement] authority under this subsection *may* be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

18 U.S.C. § 3624(c)(2) (emphasis added). The use of the permissive term "may" obviously gives direction to the BOP to decide whether home confinement for a period of, at most, six months would be the practicable way to afford the prisoner a reasonable opportunity to adjust to and prepare for reentry in the community. It does not, however, entitle a prisoner to placement in home confinement for any period of time.

The BOP's discretion in selecting the best way in which to afford the prisoner the adjustment and reentry opportunity is further illustrated by the fact that the SCA's pre-release custody provision states that: "Nothing in this subsection may be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). The referenced statute, 18 U.S.C. § 3621, grants authority to the BOP to designate the place of the prisoner's imprisonment that the Bureau determines to be appropriate and

6

suitable considering a broad range of criteria including, for example, the history and characteristics of the prisoner.  18 U.S.C. § 3621(b).  This broad grant of authority to the BOP is at odds with Petitioner's claim that Congress has now, in the SCA, so circumscribed the BOP's discretion that it must, as a result of congressional fiat, place Petitioner in a halfway house for a year or in home confinement for six months.

The regulations adopted by the Executive Branch after the enactment of the Act do not support Petitioner's argument.[1]  On April 14, 2008, the BOP issued guidance directing that the individualized RRC assessments be made, increasing RRC placement to a *maximum* allowable period of 12 months, and directing staff to review an inmate for RRC placement 17-19 months before the inmate's projected release date.  *See Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008) (addressing the interim guidance issued by the BOP to implement the SCA); *see also Bonner v. Federal Bureau of Prisons*, Civil No. 08-1474 (JRT/FLN), 2008 WL 2704192, *2 (D. Minn. June 9, 2008) (same).  Consistent with the statutory provisions discussed above, nothing in this interim guidance from the BOP required that there be a minimum 12-month placement in an RRC.

---

[1]   Petitioner says in his Petition that after the SCA went into effect the BOP "clandestinely" issued an inner-department memo directing the staff to provide no more than 180 days of RRC placement.  He has come forward with no evidence to support this claim.  The Respondents represent to the Court that "[t]he BOP, including FCI Waseca, does not have a memorandum limiting RRC placement to six months."  Petitioner's suspicion does not raise a claim which should go forward.

The regulations, which became effective on October 21, 2008, provide procedures for the BOP to designate inmates to pre-release community confinement or home detention and are also consistent with the statutory grant of discretion to the BOP to determine the appropriate type of conditions and duration for the pre-release community reintegration.  28 C.F.R. §§ 570.20-22. These regulations, like the SCA, require that inmates be considered for pre-release community confinement "in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."  28 C.F.R § 570.22.  The § 3621 factors that must be weighted to determine the length of RRC placement are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the inmate including the inmate's individual needs and existing community resources; (4) any statement by the sentencing court; and (5) any pertinent policy statement issued by the United States Sentencing Commission.  18 U.S.C. § 3621(b).

Here, the BOP staff made an individualized determination, based on these factors, that Petitioner should be placed in an RRC for six months for his pre-release confinement.  FCI Waseca unit team completed Petitioner's "SCA Review" on July 15, 2008, and considered each of the § 3621(b) factors in making its recommendation.  (Buege Decl. ¶ 6, Attach B, Second Chance Act of 2007 Review.)  For example, the unit team considered the following:

8

(a) Petitioner does not have any significant medical concerns that would hinder his chance for employment; (b) he is being released to Chicago, Illinois (Buege Decl. ¶ 7, Attach D, Acceptance of Release Plan), and the population of Chicago and its opportunities for employment will offer Petitioner services and resources for employment not available in a smaller community; (c) he will have access to community resources and has general job skills and life skills; (d) he also has access to financial resources upon release; and (e) 180 days in an RRC would be sufficient to provide Petitioner with the greatest likelihood of successful reintegration into the community.  (*Id.*)

The BOP is uniquely qualified, in the first instance, to make decisions as to the propriety, as well as the timing, of RRC placement determinations.  *Cf. Hosna v. Groose*, 80 F.3d 298, 303 (8th Cir. 1996) (noting that "federal courts ought to afford appropriate deference and flexibility to [prison] officials trying to manage a volatile [prison] environment," and "such flexibility is especially warranted in the fine tuning of the ordinary incidents of prison life," so that the Courts do not "micro manage" prisons) (citations and internal quotations omitted).  A categorical exercise of discretion by the BOP is permissible even where, as here, a statutory scheme requires an individualized determination, such as the determination made in this case, that Petitioner should be placed in an RRC for six months of re-release custody.  *See Lopez v. Davis*, 531 U.S. 230, 244 (2001) (noting that the BOP had authority to rely on rulemaking to resolve issues of general applicability even if a statutory scheme requires individualized

9

determinations).

In conclusion, there was no violation of the SCA in this case and Respondent should not be required to release the Petitioner to 365 days of community confinement, as sought by Petitioner in the first item of relief requested in the Petition.

## IV.   DISCRIMINATION

As best this Court can discern, the second request for relief in the Petition is a demand for a declaration from the Court that the BOP stop discriminating against some prisoners who are 65 years old and who are "not given a 25% reduction in their sentence(s)" based on where they happen to be imprisoned. Petitioner does not clearly spell out just what form of discrimination this entails. It does not seem to be an age discrimination claim (i.e., a claim that some prisoners are being discriminated against by being denied release because of their old age). Rather, it appears to be a claim that some older prisoners are being favored over other older prisoners in early release decisions simply because of the arbitrary factor of where they happen to be incarcerated (i.e., discrimination based on place of incarceration).

Petitioner's grievance in this regard is aimed at the Elderly and Family Reunification for Certain Non-Violent Offenders pilot program authorized by Congress as part of the Federal Prisoner Reentry Initiative, 42 U.S.C. § 17541(g) ("FPRI"). Like the SCA, the FPRI went into effect on April 9, 2008. The FPRI directs the Attorney General to conduct a pilot program in at least one BOP

10

facility in fiscal years 2009 and 2010 to determine the effectiveness of removing elderly offenders from BOP facilities and placing them on home detention until the expiration of their term of imprisonment, if they are at least 65 years old, are serving a sentence for a non-violent crime, have served the greater of ten years or 75% of their term of imprisonment, and meet certain other standards. 42 U.S.C. § 17541(g).

Petitioner asserts that he meets the eligibility requirements—for example, he is 66 years old and has served more than 75% of his term. He claims he is a victim of unconstitutional discrimination because he is not being released to serve the remainder of his sentence in home detention despite his eligibility. Taking his argument to its logical conclusion, Petitioner appears to claim that he has been denied equal protection of the law in violation of the Fourteenth Amendment because he is not incarcerated at a prison which is part of the pilot program.[2]

The legislation authorizing the pilot program does not violate the Equal

---

[2] Petitioner also refers to an unconstitutional "Bill of Attainder" in describing his objection to this law. However, the constitutional prohibition on a bill of attainder, referred to in Article I, §§ 9 and 10 of the Constitution respectively, covers a legislative act "that appl[ies] either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial[.]" *United States v. Lovett*, 328 U.S. 303 (1946). No punishment of specific individuals, or any ascertainable group, is prescribed by the legislation authorizing the pilot program. It does result in a potential benefit for some elderly prisoners who are eligible for the program, but this does not amount to punishment of other prisoners who are incarcerated in prisons which are not in the program.

Protection Clause guarantees.[3]  Although the result of the pilot program is that some elderly prisoners will be treated differently than others—some will be eligible for the program and others will not—this is not the sort of discrimination which violates the Fourteenth Amendment.  *Cf. Mastrian v. Schoen*, 725 F.2d 1164, 1166 (8th Cir. 1984) ("The mere fact of different treatment is not enough to warrant application of the equal protection clause.").  A pilot program by its very nature involves different treatment of some prisoners because only a few prisoners will be eligible for the experiment; otherwise it would of course not be a test.  This is the type of "discrimination" which will be upheld, in an equal protection analysis, so long as the different treatment of one group compared to another bears a rational relationship to a legitimate governmental objective.  *See Phillps v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (noting that an inmate must show that similarly situated classes of inmates are treated differently and that the different treatment bears no rational relation to any legitimate penal interest to prevail on an equal protection claim).  The FPRI does not involve any suspect classification (i.e., a classification based on race, national origin, alienage,

---

[3]     Respondents assert that Petitioner's equal protection claim is not ripe for judicial review because "the pilot program is not to be implemented until fiscal years 2009 and 2010." (Doc. No. 5 at 9.)  However, Respondents do not define the term of the fiscal year 2009 and provide no further detail about the status of the implementation of the pilot program.  In light of this failure and the fact that one of the objectives of the PLRA was to achieve early court review and prompt dismissal of prisoner claims, such as this one, which on the face of the Petition fail as a matter of law, this Court will review the merits of Petitioner's equal protection claim.

gender, or legitimacy), and does not impair any "fundamental right" (i.e., the right to vote, access to the courts or right to travel), and thus it does not have to be shown to be necessary to promote a compelling governmental interest in order to withstand an equal protection challenge.  *See Gavin v. Branstad*, 122 F.3d 1081, 1089 (8th Cir. 1997) ("Legislation that employs a suspect classification or impinges on a fundamental constitutional right merits stricter scrutiny and will survive only if it is narrowly tailored to serve a compelling governmental interest.").

    The classification between some elderly prisoners and others depending on prison location, which is the classification involved in the pilot program, obviously bears a rational relationship to a legitimate governmental objective and thus satisfies the Equal Protection Clause.  The legislative findings, for example, establish that expenditures on incarceration in this country skyrocketed from $9 million in 1982 to $59.6 million in 2002, and by 2002, there were over 7,000,000 people incarcerated in federal or state prisons or in local jails.  42 U.S.C. § 17501(b).  A monitored pilot program in federal prison to place elderly non-violent offenders in home detention at the end of their sentences is aimed at, and rationally related to, the governmental objective of relieving prison overcrowding, reducing the cost of incarceration, and achieving a reintegration of prisoners into the community.  The use of a test program on a limited number of prisoners to measure the feasibility of achieving these legitimate objectives is a reasonable means of proceeding.  Thus, on the merits, Petitioner's equal

protection claim fails.

Even if the pilot program for elderly prisoners raised valid equal protection concerns, Petitioner lacks standing to bring such a claim because he cannot satisfy the causation requirement of the rule articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  Constitutional standing requires three elements: (1) that the plaintiff has suffered an "injury in fact"; (2) that "there must be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant . . ."; and (3) that it must be likely "that the injury will be redressed by a favorable decision." *Id.* at 560-61 (internal quotations, alterations, and citations omitted).  Here, Petitioner lacks standing because he cannot show that the injury he complains of—that he remains in prison despite his asserted eligibility for the FPRI pilot program for early release to home confinement—is fairly traceable to any challenged conduct of Respondents.  Petitioner has not, for instance, alleged that his institution participates in the pilot program, and that some action Respondents have taken has illegally prohibited his early release to home confinement despite his asserted eligibility.

In conclusion, Petitioner's second request for relief, which is based on alleged discrimination, should also be denied.  Because this Court has recommended that all of Petitioner's requested belief be denied, Petitioner's Motion to Expedite Decision (Doc. No. 12) and Petitioner's Motion for Prerogative Writ or Motion for Immediate Consideration (Doc. No. 10), in which Petitioner

requests immediate resolution of his Petition, should also be denied as moot.

### III.     RECOMMENDATION

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. The Petition of Richard O'Hara for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) be **DENIED**;

2. The Motion for Prerogative Writ or Motion for Immediate Consideration (Doc. No. 10) be **DENIED AS MOOT**;

3. The Motion to Expedite Decision (Doc. No. 12) be **DENIED AS MOOT**; and

4. This action be **DISMISSED WITH PREJUDICE**.


Date: February 19, 2009

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 9, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.